IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MAURICE P. SCOTT,<br>    Plaintiff, | )<br>)   Civil Action No. 7:21-cv-00563<br>) |
| v. | )<br>) |
| | )   By: Elizabeth K. Dillon |
| MR. REYNOLDS, *et al.*, | )     United States District Judge |
|     Defendants. | ) |

**MEMORANDUM OPINION**

Plaintiff Maurice P. Scott, a Virginia inmate proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. His complaint names three defendants: Mr. Reynolds, a Unit Manager at Wallens Ridge State Prison (WRSP), where the events alleged in the complaint occurred; (2) Melvin Davis, WRSP's Warden, and B.J. Ravizee, WRSP's Grievance Ombudsman. The complaint is now before the court for review pursuant to 28 U.S.C. § 1915A(a).[1]

I. BACKGROUND

Scott's complaint includes a number of hand-written pages of facts in support of his claims, and some individual words are not entirely legible. These pages contain a lot of general statements, use various legal terms, and are repetitive. His concrete factual allegations, however, are fairly straightforward. Most of his claims challenge various actions or failures by WRSP staff related to the COVID-19 pandemic.

---

[1] Scott has had three or more prior lawsuits or appeals dismissed for failure to state a claim or as frivolous. *See Scott v. Mecklenburg Corr. Ctr.*, Civil Action No. 7:06cv00367 (W.D. Va. July 21, 2006); *Scott v. Sussex I State Prison*, Civil Action No. 7:06cv00369 (W.D. Va. July 6, 2006), *Scott v. Blue Ridge Regional Jail Authority*, Civil Action No. 7:05cv00281 (W.D. Va. Sep. 30, 2005). Thus, under 28 U.S.C. § 1915(g), he may not proceed *in forma pauperis* unless he is "under imminent danger of serious physical injury." Scott has not paid the proper filing fee in the case, nor has he yet applied to proceed *in forma pauperis*. He attempted to pay the filing fee, but he sent the incorrect amount to the Clerk, who returned the funds to him. The court is not dismissing the complaint under § 1915(g) but is, instead, reviewing his claims as if they were properly before the court.

Scott alleges that his pod was placed on lockdown from September 6 to September 8, 2021, because of a "COVID-19 breakout" on two nearby pods. (Compl. 4, Dkt. No. 1.)[2] On September 8, inmates in the top tier where he was housed were permitted to leave their cells to shower. His cellmate did so. At some later point, it appears that Scott also went to the showers, but he says he showered and was back in his cell in less than thirty minutes. Within days, his cellmate came down with COVID-19 symptoms, and, shortly thereafter, Scott also experienced "the worst muscle pain" on September 9, and he put in a sick call request. (*Id.* at 5.) The following day, medical and security staff came to conduct COVID-19 testing, using "advance[d]" testing that provided results within minutes. (*Id.*) Scott, his cellmate, and about five other inmates all tested positive. Aside from the reference to the "muscle pain," he does not describe his symptoms from COVID-19 with any specificity, nor does he allege that he was ever hospitalized or is suffering any ongoing symptoms.

Scott first claims that prison officials were deliberately indifferent by failing to test his pod prior to allowing the inmates to shower. He alleges that they also showed deliberate indifference by not testing him until he wrote the sick call request and complained about feeling ill, although he acknowledges that he was tested the day after he complained. He also complains that the prison officials failed to follow unspecified CDC protocols. (*Id.* at 6.)

Next, Scott contends that prison officials "continue to put [his] life and health at risk" because he is housed with "the same cellmate that is" not vaccinated against COVID-19. (*Id.* at 6–7.) Scott, by contrast, has had "both shots." (*Id.* at 7.) He complained to defendant Reynolds that vaccinated inmates should not be housed in the same cells as unvaccinated inmates, but Reynolds replied that the prison did not house offenders by vaccination status. (*Id.* at 7.) Scott makes a vague reference to WRSP "letting too many inmates be in close surroundings," but he

---

[2] The court uses the pages assigned by the CM/ECF system to Scott's complaint, which are different than Scott's numbering.

does not provide more details. *Id.* Scott contends that all of these actions violated his constitutional rights.

The remainder of Scott's complaint is devoted to complaints about defendant Ravizee and the manner in which she handled his written complaints and grievances, after he filed complaints concerning Reynolds' response to him and the fact that he was being housed with a non-vaccinated inmate. (*See generally id.* at 7–10.) He claims that her actions violated the grievance policy of the Virginia Department of Corrections (VDOC) and also constituted a "reprisal" against him for using the grievance system. He alleges in general that Ravizee's actions are preventing him from fully exhausting the grievance procedure. His complaint also includes a number of written complaints and grievances he has filed regarding this and other issues, and grievance reports reflecting their filing and action on them. (*See generally* Compl. at 11–36.)

## II.  DISCUSSION

Under 28 U.S.C. § 1915A(a), the court must conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Pleadings of self-represented litigants are given a liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). "To state a claim under § 1983[,] a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017) (internal quotation marks omitted).

Applying those standards here, the court concludes that Scott's complaint must be dismissed for several reasons. First, his claims against Ravizee fail to state a constitutional violation. The Fourth Circuit has squarely held that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). Relying on this or similar statements by the Fourth Circuit, many district courts have held that a prison official's failure to comply with a grievance procedure is not actionable under § 1983. *Brown v. Va. Dep't of Corr.*, No. 6:07-CV-33, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) ("[T]here is no liability under § 1983 for a prison administrator's response to a grievance or appeal."); *Oliver v. Gray*, No. 7:09-CV-00004, 2009 WL 366150, at *2 (W.D. Va. Feb. 12, 2009), *aff'd*, 360 F. App'x 417 (4th Cir. 2010) ("Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983."). Because all claims against Ravizee arise only from her alleged failure to properly follow the grievance process, they must be dismissed.[3]

As to Scott's claims concerning the conditions or policies that led to him contracting COVID-19 and his current situation of being housed with an unvaccinated cellmate who already has had COVID-19, the court construes those claims as claims of unconstitutional prison conditions under the Eighth Amendment. As discussed next, Scott has failed to allege facts sufficient to entitle him to relief on those claims.

With regard to defendant Warden Davis, Scott does not mention that Davis was responsible for the decisions regarding the lock-downs, release from lockdown, or cell

---

[3] Scott's complaint also references "reprisal," but it does not allege that Ravizee took any adverse action against him, other than interfering with or improperly handling his grievances. Thus, the court does not construe his complaint as asserting a claim that anyone retaliated against him for using the grievance procedure. And although Scott's allegations that Ravizee prevented him from fully exhausting his administrative remedies might be relevant if the court were addressing a contention by defendants that Scott failed to exhaust, those allegations do not state an independent claim.

assignments, nor does he allege that Davis had or has any knowledge about any particular danger to Scott. Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, a § 1983 claim requires factual detail about each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Because he fails to allege any personal involvement by Warden Davis, Scott fails to state a claim against him.

To the extent that Scott is naming Davis simply because he is a supervisor with authority over WRSP, he has failed to allege facts to establish supervisory liability. *See Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (discussing the elements necessary to establish supervisory liability under § 1983); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (same). Moreover, there is no respondent superior liability under § 1983. *Vinnedge*, 550 F.2d at 928. Thus, the complaint fails to state a claim against Davis.

The Eighth Amendment claims against Davis and Reynolds also fail to set forth sufficient factual matter to state a claim for which relief can be granted. The Eighth Amendment protects prisoners from cruel and unusual living conditions. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To plead such a claim would require facts showing that: (1) objectively, the deprivation was sufficiently serious, in that the challenged, official acts caused denial of "the minimal civilized measure of life's necessities"; and (2) subjectively, the defendant prison officials acted with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). To satisfy the first element,

the prisoner must show "significant physical or emotional harm, or a grave risk of such harm," resulting from the challenged conditions.  *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

As noted, Scott does not identify that he became gravely ill from COVID-19 and does not set forth specific symptoms, aside from at least one day of "muscle pain."  Although the complaint itself does not indicate if he got sick before or after being vaccinated, his attached documents show that he had received at least one vaccination shot at least as of September 10.  (Compl. 28.)  Assuming for purposes of this opinion that Scott has adequately alleged the objective component of his claim, Scott fails to allege facts sufficient to establish deliberate indifference.  Indeed, his own allegations reflect that WRSP officials took steps to prevent the spread of COVID-19 and to protect inmates.  He explains that there were lockdowns once there was a breakout; that when he complained of symptoms, he received a test with rapid results; and that inmates have been given the opportunity to be vaccinated, an opportunity that he took.  He also admits that the facility had tested for COVID-19 in his pod before he became infected, although he claims that Reynolds's statement in a grievance response that testing was "recently done" was a lie because it was two months before the "spread" of the disease on September 8 & 9.  (Compl. 10.)

Taken in total, these measures by WRSP officials refute any finding of deliberate indifference on the part of the defendants, based on the facts pled in Scott's complaint.  *See Baxley v. Jividen*, No. 3:18-1526, 2020 WL 1802935, at *6 (S.D. W. Va. Apr. 8, 2020) (noting, in context of denying preliminary injunction, that plaintiffs likely could not show deliberate indifference where defendants' actions showed that they had a plan in place to try to limit transmission of COVID-19).  Albeit earlier in the pandemic, the *Baxley* court's explanation still rings true here:  "Mitigation is all that can be demanded in this case, as no technology yet exists that can cure or entirely prevent COVID-19.  The best scientists in the world have been unable to

6

eliminate the risk of the disease, and the Court can expect no more of Defendants." *Id.* Given that Scott's own allegations establish that defendants have taken steps to limit transmission of the disease (such as lockdowns and testing symptomatic inmates, and to offer vaccinations to inmates, he cannot show deliberate indifference on the part of any defendant.

Furthermore, Scott has not alleged facts to show that any defendant—or anyone at the WRSP—knew of a specific risk to him, other than the general risks of COVID-19 that they sought to address. He does not allege that he was particularly vulnerable to serious complications from the virus. Nor does he allege that he suffered any such complications. In the absence of a defendant's actual knowledge of a serious risk to Scott's health or safety, he has failed to state an Eighth Amendment claim.

In short, prison officials are required to take reasonable measures to guard against any inmates' contraction of serious diseases, but the mere fact that Scott became infected while in prison does not support an Eighth Amendment claim. *See, e.g.*, *Toure v. Hott*, 458 F. Supp. 3d 387, 408 (E.D. Va. 2020) ("Plaintiff has not established deliberate indifference . . . simply because another inmate, who had been released from a COVID-19 quarantine, was assigned as his cellmate. '*Every person in the United States, whether in a detention facility or not, faces COVID-19 exposure.*'") (emphasis in *Tillery*) (citation omitted)).

For the foregoing reasons, Scott's Eighth Amendment claims fail.

### III. CONCLUSION

For the foregoing reasons, Scott's complaint is subject to dismissal. An appropriate order will be entered.

Entered: December 6, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

7